**Mary DUFFY and Norman Duffy, Appellants–Plaintiffs,**

v.

**BEN DEE, INC., Appellee–Defendant.**

**No. 89A04–9409–CV–388.**

Court of Appeals of Indiana.

June 6, 1995.

Rehearing Denied Aug. 21, 1995.

---

Jon R. Pactor, Indianapolis, for appellants.

Rebecca J. Maas, Eric Brodt & Associates, Indianapolis, for appellee.

## OPINION

CHEZEM, Judge.

### Case Summary

Plaintiffs–Appellants, Mary and Norman Duffy ("Mary" and "Norman," individually, "the Duffys," collectively) appeal the grant of summary judgment to Defendant–Appellee, Ben Dee, Inc. ("Ben Dee"). We affirm.

### Issue

The Duffys present four issues for our review which we consolidate and restate as follows: Whether a contractor who is a business invitee is liable for injuries sustained on

his bulldozer under a theory of premises liability.

### Facts and Procedural History

There are no genuine issues of material fact in dispute. The facts most favorable to the nonmovants, the Duffys, indicate that Sam Bender ("Bender"), president of Ben Dee, was hired by the county to perform construction on a bridge near the Duffys' home. Mary was a "handler" for the Department of Natural Resources and had been a handler for approximately seventeen (17) years. Mary kept wild raccoons in her home, eventually releasing them into the wild. Many of the raccoons remained near the Duffy home after their release. Mary continued to feed the raccoons and built an outdoor shelter for them which she named the "coondominium." Frieda, one of the raccoons cared for by Mary, had a litter of baby raccoons in the coondominium.

Soon after, Frieda moved her litter to the cab of a Ben Dee bulldozer. The bulldozer was being used by Ben Dee to complete construction on the bridge. Bender discovered the raccoons in the bulldozer and, rather than disturb them, he notified Mary of the raccoons' whereabouts. Mary suggested and Bender agreed that Bender should stand away from the bulldozer while Mary removed the raccoons. Mary successfully removed Frieda and returned to the bulldozer to remove the other raccoons. On her way down, Mary fell off the bulldozer and sustained personal injuries.

### Discussion and Decision

We must determine whether Ben Dee, as a matter of law, owed a duty to warn or instruct Mary as to the potential peril involved in dismounting a bulldozer. Whether there is a legal duty from one party to another in a negligence action is a pure question of law. *Douglass v. Irvin* (1990), Ind., 549 N.E.2d 368, 371. Because it is not necessary to factually determine whether a duty has been breached when there is no duty, a determination that there is no duty is dispositive in a negligence action. Therefore, if Ben Dee owed no legal duty to Mary, summary judgment was properly granted.

Upon review of a grant of summary judgment, we apply the same legal standard as the trial court: summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C); *Marathon Petroleum Co. v. Colonial Motel Properties, Inc.* (1990), Ind.App., 550 N.E.2d 778. On review, we may not search the entire record to support the judgment, but may only consider that evidence which had been specifically designated to the trial court. *Keating v. Burton* (1993), Ind.App., 617 N.E.2d 588, *reh. denied, trans. denied.* The party appealing the trial court's grant of summary judgment has the burden of persuading this court that the trial court's decision was erroneous. *Indiana Republican State Comm. v. Slaymaker* (1993), Ind.App., 614 N.E.2d 981, *trans. denied.*

Summary judgment is generally inappropriate in negligence actions. *Barsz v. Max Shapiro, Inc.* (1992), Ind.App., 600 N.E.2d 151. However, if the facts of the case are not in dispute, summary judgment is appropriate to test the law of a negligence action. *Northern Indiana Public Service Co. v. East Chicago Sanitary Dist.* (1992), Ind.App., 590 N.E.2d 1067.

Mary attempts to assert a duty *via* premises liability theory. However, a duty cannot be properly found under premises liability in this matter. In order for premises liability theory to apply in this situation, each of the three following elements must be present: (1) Ben Dee must have been an occupant or owner of the land, as discussed by Restatement (Second) of Torts, Section 328E (1965), and; (2) Mary must have been an invitee, rather than a trespasser or licensee, as discussed in *Burrell v. Meads* (1991), Ind., 569 N.E.2d 637, and; (3) the bulldozer must have been a condition of the land, as discussed by Restatement (Second) of Torts, Section 343 (1965).

Whether Mary was an invitee, rather than a licensee, is a question of fact not determinable at the summary judgment level. However, whether Ben Dee was an occupant of the land and whether the bulldozer was a condition of the land are matters which

determine the outcome of this case at summary judgment. Since each of these issues is dispositive, we will discuss only whether Ben Dee was an occupant of the land for purposes of premises liability.

■ Under the concept of premises liability, a landowner or occupier must exercise reasonable care to warn an invitee of a hazard or to make the premises reasonably safe for him. *See, Burrell,* 569 N.E.2d 637 (discussing the history of premises liability theory in Indiana). The Restatement (Second) of Torts, Section 328E defines a possessor/occupier of land as: "a person who is or has been in occupation of land with the intent to control it, or a person who is entitled to immediate occupation of the land, if no other person is or has been in occupation of land with the intent to control it."

■ We recently held that a subcontractor who performs work on a premises is not an "occupier" for purposes of premises liability. *Woods v. Qual–Craft Indust., Inc.* (1995), Ind.App., 648 N.E.2d 1198 (relying on Restatement (Second) of Torts, Sec. 328(E)). Only two other Indiana cases directly discuss the definition of "occupant" as put forth in the Restatement.

In *Sowers v. Tri–County Telephone Co., Inc.* (1989), Ind., 546 N.E.2d 836, *reh. denied,* a telephone company hired a contractor to clear the brush around its poles. One of the contractor's employees fell into a manhole located near a telephone pole and sued the telephone company and the landowners for negligence. Our supreme court held that, although the telephone company had a prescriptive easement over the land where the manhole was located, it exercised no control over it except for occasional repairs. Moreover, imposing on the telephone company a duty to maintain in a safe condition all the land over which it had easement rights would be an excessive burden and undesirable on public policy grounds.

Ben Dee's duty, if any, as a contractor-invitee on the land, flows from the nature of Ben Dee's relationship to the land, as discussed in *Sowers:*

Because Tri–County is not a traditional landowner or occupier, however, it is nec-essary to ask what legal duty should flow from the company to its business invitees. That question involves consideration of more than just foreseeability of possible harm; it involves consideration of legal and social policies which include the foreseeability and likelihood of the injury, the magnitude of the burden of guarding against the injury and the consequences of placing that burden on the defendant. *Swett v. Village of Algonquin,* 169 Ill. App.3d 78, 119 Ill.Dec. 838, 523 N.E.2d 594 (1988).

*Sowers,* 546 N.E.2d at 838.

Unlike the telephone company, Ben Dee had no prescriptive easement or legal ownership interest in the land. The bulldozer's placement on the land was temporary, for the specific purpose of bridge repair. Ben Dee had no duty to maintain the land in a safe condition. "The boundaries of the duty of reasonable care that a utility such as Tri–County owes to its business invitees must be defined from the utility's own use of the easement." *Id.* The bulldozer was not the land, or an attachment to the land from which any liability would emanate. Rather, the bulldozer was a piece of equipment temporarily placed on the land for the benefit of the county which hired Ben Dee to perform construction work. Ben Dee's position is identical to the position of the subcontractor in *Woods v. Qual–Craft Indust. Inc.* Our supreme court discussed occupancy status in *Risk v. Schilling* (1991), Ind., 569 N.E.2d 646, *reh. denied.* A partner in a partnership that owned farm land maintained a workshop on the property for his own personal hobby. A friend of the partner was severely burned when a jug of scalding liquid exploded in the workshop while the friend was assisting the partner. The friend sued the partner and the partnership for negligence. Our supreme court held that because the partnership did not exert control over the workshop, it did not owe the plaintiff a duty of reasonable care for protection of his safety. The court found that the partner was the sole occupier and possessor of the workshop.

Unlike the workshop, Ben Dee's bulldozer was not a permanent fixture to the land. Had Mary's injury on the bulldozer occurred

while the bulldozer was parked alongside a highway, premises liability could not be asserted. The workshop was a real property improvement over which the partner exerted control. Even had the workshop been a movable trailer, it would have had the requisite sense of permanency on the land. With real property and improvements thereon come certain legal and/or prescriptive rights. Ben Dee was a business invitee himself with no legal or prescriptive rights in the land, and thus no liability as an owner or occupant.

It is thus not relevant whether the bulldozer was inherently dangerous because Mary's legal theory is restricted to premises liability, and not general negligence. We therefore decline the invitation to discuss whether Bender had a duty to Mary under general negligence principles.

Affirmed.

DARDEN and FRIEDLANDER, JJ., concurring.